HARRIS *v.* WATKINS.

4-8252                                                            205 S. W. 2d 16

Opinion delivered October 27, 1947.

*Burke, Moore & Walker* and *D. S. Heslep,* for appellant.

*A. M. Coates,* for appellee.

Smith, J. Appellee Watkins sued Appellant Harris for an accounting, alleging that Harris owed him a sum in excess of $6,000 after listing credits to which Harris was entitled, in the sum of $1,081.03. By consent a master was appointed to state the account on depositions taken by the respective parties. The master made report that Harris was indebted to Watkins in the sum of $6,899.40, and that Harris was entitled to credits amounting to $995.32, thus fixing a balance due Watkins of $5,904.08.

In the complaint Watkins alleged that Harris had rented from him 300 acres of land for which Harris agreed to pay $7 per acre as rent, or a total of $2,100, but he later amended his complaint to allege that he had rented his farm to Harris for the lump sum of $2,800.

When the master made his report, Harris filed a motion that he be permitted to take additional testimony under the allegation that evidence had been newly discovered which would show errors in the masters' report. This motion was overruled and we are unable to say that the discretion of the court was abused in this respect, inasmuch as the testimony was taken by depositions, and abundant time had been allowed for that purpose, and proper diligence was not shown in discovering the evidence.

The testimony relates to a large number of items which are set out in the master's report, to which Harris filed numerous exceptions, none of which were sustained by the court. We will discuss only the exceptions which we think are sustained by the testimony.

Watkins owned farming land in the northern part of Desha county, while Harris had much larger farming interests in the southern part of Phillips county, these being adjoining counties. Watkins became badly in-

volved financially, and was unable to completely gather his crop of cotton and corn, or to make arrangements for farming his land during the ensuing year. He applied to and received assistance from Harris. He turned over to Harris numerous items of personal property covered by the master's report. Watkins testified that this was done with the understanding that Harris pay his debts, but the master did not so find, nor would we, if Watkins had filed exceptions in this respect. But the master did profess to find and value the personal property which Watkins had turned over to Harris, and his finding and report as to the quantity of this property and the value thereof is the subject of numerous exceptions by Harris. We take up in order such of these exceptions as we think should be sustained under the testimony in the case.

The first of these is the charge of $2,800 rent on Watkins' farm land which Harris cultivated in the year 1945. There was much testimony, sharply conflicting, as to the rent to be paid. Testimony offered by Watkins was to the effect that Harris agreed to pay $7 per acre, while the testimony offered by Harris was that the agreed rent was $5 per acre. However, Watkins finally testified that the agreed rental was $2,800, and he was allowed credit for that sum.

We think this was error not only because Watkins had alleged in his complaint that the rent was to be $2,100, which would be $7 per acre for 300 acres of land, but for the further reason that Watkins was asked how much land he cultivated and he answered: "About 300 acres of land that can be cultivated. The rest is in the woods, lakes and levees." However Watkins did testify that there were 450 acres subject to cultivation. Harris' version of the rental contract was that the planting season was far advanced when he agreed to rent any of the land, and that he agreed to pay rent on only so much of the land as he was able to cultivate, and that this acreage was 185. We think the rent should be charged on 300 acres as there was that much land subject to cultivation, and no one except Harris cultivated any. However, we find that an excessive charge for rent of $700 was made.

The master charged Harris with 2,093.2/3 bushels of corn at $1.10 per bushel, amounting to $2,303.02. Watkins had 105 acres in corn. The testimony shows that Harris gathered the corn, pursuant to his contract with Watkins, whatever that contract may have been, and about which there are sharp disputes in the testimony. According to Harris he agreed to harvest the corn, deduct the cost of doing so and divide the proceeds of the sale of the corn. According to the testimony offered by Watkins, he sold the corn in the field to Harris "where it is and as it is" for $1.10 per bushel. The master's report indictates that he accepted the testimony as true, but even so we think he charged Harris for an excessive amount of corn.

It is impossible to reconcile the testimony as to many of the items and charges in the master's report to which Harris excepted. We are unable to say that in accepting Watkin's version as to the terms of the sale of the corn the master made a finding contrary to the preponderance of the evidence, but we do find that the master's report as to the amount of corn for which Harris should be charged is contrary to a preponderance of the evidence.

The testimony of Watkins in regard to the corn is corroborated by that of one C. E. Shackleford who had been employed by Harris as a farm manager, but who had been discharged, and who made little effort to conceal his hostility to Harris. Shackleford and Watkins agreed as to the terms of the sale and both testified that when the corn had been gathered and placed in three farm houses, marks were placed on the walls of the houses showing the height of the piles of corn, and when it was removed they measured the cubic content of the space it had occupied and calculated the number of bushels of corn from the measurement. The master's report is based upon this testimony. Shackleford reported that he did not actually measure the buildings, but just looked to see if Watkins had measured them. This was about the last of April or the first of May.

If this testimony was opposed only by that of Harris, we would not disturb the master's finding, but it sharply conflicts with testimony which tends to discredit it. One Bourland who had been Harris' farm manager, but had removed to Mississippi, testified that he superintended the gathering of the corn, which commenced April 11th and was completed about the 20th or 22nd of that month, that he has a record of the corn gathered, according to which there were 734 bushels.

One Ellis, who described himself as a straw-boss, working now for Harris, had been employed by Watkins as an overseer in 1944, the year the corn was grown. He testified there was no fence around the corn, and that hogs and cows had been turned into the corn field, and that a lot of the corn had been stolen or consumed by the hogs and cows, that he was in charge of the labor when Harris gathered the corn and that he estimated between 800 and 1,000 bushels were gathered.

One Dickens testified that he had been employed by Watkins as a farm manager in 1944, and that he personally supervised the cultivation of the corn crop, which in his opinion would have yielded about 3,360 bushels had it been gathered seasonably, but he testified that when the corn was gathered in April livestock had been running in it, a part had been stolen, and the weather had damaged the remainder, so that at the time it was gathered not more than one-half remained and half of that was damaged.

Just what the truth is in regard to this corn may never be known, and we do not profess to have determined that fact, but we do find the credit allowed to Watkins on this account should not exceed $1,803.02, and that any charge in excess of that sum is contrary to the preponderance of the evidence. This charge will therefore be reduced to $1,803.02.

There are exceptions to other items in the master's report involving charges against Harris, with corresponding credits to Watkins, as to the justice of which we entertain grave doubts, but we sustain only the exceptions

to the master's report which we find are contrary to the preponderance of the evidence.

In his complaint Watkins itemized credits to which Harris was entitled totaling $1,081.03, yet the master allowed Harris credits of only $995.32, a difference of $85.71, and we find no satisfactory reason why Harris should not be given the full amount of the admitted credit.

The charge for rent made by the master will be reduced from $2,800 to $2,100, and the charge for the corn will be reduced from $2,303.02 to $1,803.02.

The judgment against Harris will therefore be modified by charging him with only $2,100 on account of rent, with only $1,803.02 on account of corn, and Harris will be allowed the additional admitted credit of $85.71. As thus modified the master's report and the decree thereon is affirmed.